Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. At all relevant times herein, Insurance Company of the State of Pennsylvania was the carrier on the risk.
4. Plaintiffs average weekly wage was $223.65, yielding a compensation rate of $149.10.
5. The parties stipulated to plaintiffs medical records from West Anson Medical Clinic, Union Regional Medical Center and from Drs. Bruce Darden, Joseph J. King and A. P. Kitchen (These stipulated records were omitted from the transcript but have now been included as a part of the record herein).
6. At the hearing before the Full Commission, the parties orally stipulated that compensation awarded herein would terminate as of 11 May 1999, and that compensation after that date shall be determined by agreement of the parties or by Order of the Industrial Commission.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 33 years old.
2. In 1990, plaintiff sustained an on-the-job lower back injury with a different employer which resulted in a lumbar laminectomy to repair a ruptured disc at L5-S1 which was performed in 1991. Following recuperation from his 1990 work-related injury, plaintiff returned to work and re-injured his back in 1993. Plaintiff was treated conservatively with epidural injections and physical therapy. Plaintiff returned to work.
3. Defendant-employer hired plaintiff as an overnight freight stocker. Plaintiffs duties included walking his department, straightening up his department and stocking shelves.
4. On 16 March 1998, plaintiff reported to defendant-employer for work at midnight. Plaintiffs supervisor, Tim Haire, told plaintiff to take some of the computers down off of a high shelf. Plaintiff got an eight foot step ladder to retrieve the computers and as he came down the ladder with a computer box in his hands, plaintiff missed a step, fell backwards and landed on the floor on his right side.
5. Plaintiff felt a pop and immediate pain in his back and left leg. Plaintiff immediately reported his fall to Mr. Haire. Mr. Haire sent plaintiff for medical care.
6. Dr. J. C. Adams in the Union Regional Medical Center emergency room diagnosed plaintiff with broad based disk protrusion on the left at L5-S1. Plaintiff attempted to return to work that night and on several days thereafter until his back pain prevented him from working.
7. Plaintiffs back pain continued and he was referred to Dr. Joseph King, an orthopedic surgeon. Plaintiff reported to Dr. King that he had injured his back when he fell backwards coming off of a ladder and missed a step. Plaintiff also reported his L5-S1 disc excision surgery and its subsequent complications. Dr. King ordered an MRI, epidural injections and eventually recommended a laminectomy and disk excision at L5-S1 on the left.
8. Following plaintiffs laminectomy and disk excision L5-S1 on the left in July 1998, plaintiff continued to experience severe pain and numbness in his left leg. Dr. King prescribed pain medication, muscle relaxation medication and a TENS unit to attempt to alleviate plaintiffs pain. Nevertheless, plaintiff attempted to return to work on 15 March 1998, 21 March 1998, 22 March 1998, 24 March 1998, 21 May 1998, 7 September 1998, 3 November 1998 and 4 November 1998. On each of these dates, plaintiff worked for at least four hours and for as long as eight hours.
9. After the remedial surgery, plaintiffs psychological condition became unstable and he attempted to withdraw from his pain medications too quickly causing him to become physically and psychologically ill. Consequently, plaintiff entered a detoxification unit for three days.
10. At the hearing before the Deputy Commissioner, plaintiff testified that he had been treated for depression and general anxiety disorder prior to 16 March 1998, but that he is currently stabilized and under appropriate medication.
11. Dr. King stated that plaintiffs pain complaints were consistent with his injury and that he has no doubt that plaintiff has been truthful about his pain. Dr. King further opined that plaintiffs fall off of the ladder on 16 March 1998, could have aggravated or accelerated any existing back pain or back injury that plaintiff may have had on 16 March 1998.
12. Dr. King determined that by 4 January 1999, he had exhausted all efforts for treatment of plaintiffs his back condition which he deemed appropriate, but plaintiff had not "gotten any better anywhere along the way. On that basis, Dr. King stated that one could pick any date subsequent to 16 March 1998 as the date plaintiffs condition had reached a plateau in regard to recovery. For this reason, no weight is given to Dr. Kings opinion on when plaintiff reached maximum medical improvement. Plaintiff had not reached the end of his healing period on 4 January 1999. However, Dr. King stated that it was possible that plaintiff may not be able to return to regular duty. Dr. King further noted that plaintiffs previous restrictions to alternate sitting and standing and to lift no more than five pounds remained appropriate.
13. Defendant-employer surveilled plaintiff; however, the surveillance and private investigators, Patsy Voyers and Lisa Runkel, failed to establish that plaintiff was pain-free. Rather, the surveillance results revealed that plaintiff walked stiffly and slowly, consistent with his movements at the hearing.
14. The Deputy Commissioner had the unique opportunity to observe the witnesses, their demeanors and the intonation of their voices. Having weighed the testimony of both parties, the Deputy Commissioner gave more weight to the testimony of plaintiff, and the Full Commission adopts that determination.
15. The competent evidence in the record establishes that plaintiff sustained an injury by accident arising out of the course of his employment and as a direct result of a specific traumatic incident of the work assigned on 16 March 1998, which aggravated, exacerbated and/or accelerated an underlying pre-existing back condition.
16. Defendants have reasonably defended this matter and no award of attorney fees is warranted.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned on 16 March 1998 which aggravated, exacerbated and/or accelerated an underlying pre-existing back condition. N.C. Gen. Stat. 97-2(6).
2. As a direct and proximate result of plaintiffs work-related injury by accident on 16 March 1998, plaintiff sustained an aggravation, exacerbation and/or acceleration of his pre-existing back condition. N.C. Gen. Stat. 97-2(6).
3. Plaintiff is entitled to workers compensation benefits in the amount of $149.10 per week beginning 16 March 1998, and continuing until 11 May 1999. Compensation after this date shall be determined by agreement of the parties or by Order of the Industrial Commission. Compensation due which has accrued, shall be paid to plaintiff in a lump sum subject to attorneys fees hereinafter provided. Defendants are entitled to a credit for the time plaintiff worked as set forth above in Paragraph 8 of the Findings of Fact.
4. Plaintiff is entitled to have defendants pay for all medical expenses incurred, or to be incurred, for the injury by accident to plaintiffs back and subsequent leg pain, including but not limited to, a work-hardening program and vocational rehabilitation, arising from this injury by accident for so long as such evaluations, examinations, and treatment may reasonably be requested to effect a cure, give relief, and will tend to lessen plaintiffs disability from his injury by accident of 16 March 1998. N.C. Gen. Stat. 97-25, 2(19).
5. Plaintiff is not entitled to attorneys fees as defendants reasonably defended this matter. N.C. Gen. Stat. 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorneys fees hereinafter provided, defendants shall pay to plaintiff workers compensation benefits at the rate of $149.10 per week beginning 16 March 1998 and continuing until 11 May 1999. Compensation after this date shall be determined by agreement of the parties or by Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorneys fees hereinafter provided. Defendants are entitled to a credit for the time plaintiff worked as set forth in Paragraph 8 of the above Findings of Fact.
2. Plaintiff is entitled to have defendants pay for all medical expenses incurred, or to be incurred, for the injury by accident to plaintiffs back and subsequent leg pain, including but not limited to, a work-hardening program and vocational rehabilitation, arising from this injury by accident for so long as such evaluations, examinations, and treatment may reasonably be requested to effect a cure, give relief, and will tend to lessen plaintiffs disability from his injury by accident of 16 March 1998.
3. As plaintiff has not yet reached the end of the healing period for his back, this Opinion and Award does not address the issue of permanent disability. However, in the event that the parties should be unable to agree on the amount, if any, of additional compensation for temporary total or permanent partial impairment to plaintiffs back which may be due, either party may request a hearing from the Commission to resolve this issue.
4. A reasonable attorneys fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is hereby approved for plaintiffs counsel and shall be deducted from that sum and paid directly to plaintiffs counsel.
5. Defendants shall pay the costs.
 *********** ORDER
IT IS HEREBY ORDERED that defendants shall pay the cancellation fee of $300.00 to the Rehabilitation Center.
 ***********
This the ___ day of March, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER